BARRY, Respondent, v. CALVARY CEMETERY ASSOCIATION, Appellant.

**St. Louis Court of Appeals, April 26, 1904.**

**LICENSE: Cemeteries: Damage.** Where the grounds of a cemetery were laid off with roadways constructed for the accommodation of visitors, who were nevertheless permitted to walk over the ground at will, the owner of a lot in the cemetery, with a card of admission, who left the roadway and walked across the ground, became a mere licensee, and could not maintain an action against the cemetery company for damages caused by stepping into a hole left in the ground.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED.

*E. T. Farish* for appellant.

There was no duty imposed upon defendant of inspecting and examining its grounds and finding out small depressions, probably gopher holes, which were overgrown with grass and entirely obscured from view. And in the absence of such duty, no liability could be ascribed to defendant. Anderson's Dictionary of Law, p. 703; Black's Dictionary, 807; Cooley on Torts (2 Ed.), p. 752; Brown v. Railroad, 49 Mich. 153; Railroad v. Jones, 95 U. S. 441; Railroad v. Haworth, 39 Ill. 358; Galloway v. Railway, 87 Ia. 458; Railway v. Gorman, 2 Tex. State Civ. App. 144, 21 S. W. 156, Webb's Pollock on Torts, p. 537; Thompson on Negligence, secs. 8, 14, 945, 969, 985, 994, 996.

*David Murphy* for respondent.

Respondent claims that the rule of law is, that a property-owner, who invites his patrons to go over his grounds on business with him, is bound to use ordinary care to have such grounds in a reasonably safe condition for travel. Eisenberg v. Railroad, 33 Mo. App. 85 (citing Welch v. McAllister, 15 Mo. App. 492; Smith v. St. Louis, 45 Mo. 449; Mahoney v. Railroad, 104 Mass. 75). The same rule is laid down in O'Donnell v. Patton, 117 Mo. 13, as also the further proposition that failure to exercise this kind of care and caution amounts to negligence.

## STATEMENT.

Plaintiff's suit is to recover damages for injuries to her ankle caused by stepping in a hole on the grounds of defendant, who is a corporation, organized under the laws of the State, and is engaged in keeping and maintaining four hundred and fifty acres of ground, in the city limits of the city of St. Louis, for cemetery purposes, known as Calvary cemetery. The evidence shows that defendant sells burial lots in the grounds; that of

the four hundred and fifty acres, two hundred acres have been improved by the construction of twelve miles of driveways and also by the laying of some granitoid walks. The grounds are under the immediate care of a superintendent, who has employed under him thirty-five men in the winter season and fifty in the spring and summer seasons to keep the grounds and roadways in good condition. Except on funeral occasions, the public are not admitted to the grounds. The owners of burial lots are furnished with cards which admit them to the grounds at any time they may choose to visit them. The plaintiff is the owner of a burial lot on the grounds, where her brother is buried, and has a card of admission. On July 13, 1902, plaintiff, her daughter and sister entered the cemetery for the purpose of visiting the grave of plaintiff's brother. This grave can be reached by a road running direct from the main entrance to the grounds. The roadways are circular and plaintiff testified that, although she had visited the grave of her brother twelve or more different times, on account of the circular form of the road, she did not know how to go direct to her brother's grave and frequently lost her way by turning onto the wrong road. The party first went to the graves of some children and then turned and traveled on a road leading in the direction of the brother's grave. When they had arrived within five hundred feet of the grave, they left the circular road to travel direct to the grave across the grounds, then covered by a high growth of grass. On taking the second step from the road, plaintiff stepped into a hole (she is a large woman, weighing two hundred pounds) and was unable to extricate her foot until assisted to do so by a man who was nearby. Her ankle was badly sprained and she was unable to stand or walk. On account of the injury she was confined to her bed for about two months and suffered considerable pain. Her attending physician testified that he put her ankle in light splints; that it was a very bad sprain but he did not think the injury

permanent. Plaintiff testified, as all the evidence shows, that the hole in which she stepped was covered over and entirely concealed from view by grass which grew around and lapped over it. A measurement of the hole showed it to be nine and one-half inches deep, fourteen inches long and eleven inches wide; that it was an old hole with a stump or end of a decayed root at the bottom which had the appearance of having been hacked off. Nearby was a large, live maple shade tree, the roots of which, according to the evidence, extended twenty or more feet from its trunk. Plaintiff testified that the ground looked solid; that she did not see the hole and had no warning of its presence until she stepped into it.

The evidence shows that while visitors to the grounds are expected to keep on the walks and roadways, yet they are not required to do so, and they are in the habit of traveling over the grounds at will. The evidence shows that the superintendent did not learn of the existence of the hole until October, 1902, nor is there any evidence tending to show that any employee of the association knew of the existence of the hole until after plaintiff's injury. The superintendent testified that the grounds were infested by gophers and that they frequently made holes like the one in which plaintiff stepped and that these holes were often made larger by dogs scratching after the gophers; that the employees were instructed by him to keep a lookout for such holes and when found to fill them up with clay. The evidence does not show when the hole was made or by what means it was made. It is described, however, as an "old hole," and the physical facts surrounding it show that it was there early in the spring before the growth of the grass.

Defendant demurred to plaintiff's evidence. The demurrer was overruled and under the instructions of the court the plaintiff recovered a verdict and judgment in the sum of three hundred and fifty dollars. Defendant appealed.

BLAND, P. J. (after stating the facts).—The evidence shows that the part of the grounds where plaintiff was injured had been laid off into burial lots and roadways; that the roadways had been improved and were in condition for the use of both pedestrians and carriages and were used by both. Their construction was notice to visitors that the roads were made for their use and that they were expected to use them. Such of the burial lots as had been sold were private property, though under the immediate care and supervision of the defendant association. To roam over these lots where bodies were buried was a species of desecration, therefore, it can not be said that the admission of visitors to the grounds was an invitation to them to travel over the burial lots, or on any part of the grounds outside the limits of the roadways, and the testimony of the superintendent shows that visitors were expected to keep in the roadways. There is, therefore, no evidence whatever that plaintiff was invited to go upon the ground where she was injured, nor can that inference be drawn from the fact that visitors were permitted to travel across lots for their own accommodation. The plaintiff, therefore, was a mere licensee on the ground where she was injured and is not entitled to recover. The law in respect to her situation is thus expressed in Sweeny v. Railroad, 10 Allen l. c. 372:

"In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault, or negligence, or breach of duty, where there is no act, or service, or contract, which a party is bound to perform or fulfill. All the cases in the books, in which a party is sought to be charged on the ground that he had caused a way or other place to be incumbered or

suffered it to be in a dangerous condition, whereby accident and injury had been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated. Thus a trespasser who comes on the land of another without right can not maintain an action, if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon.''

Also by the following other decided cases:

Reardon v. Thompson, 149 Mass. 267, where it was held: ''An open hole in the earth, which is not concealed otherwise than by the darkness of the night, is a danger which a mere licensee going upon the land must avoid at his peril.''

Stevens v. Nichols, 155 Mass. 472, where it was ruled: ''Where the defendants opened a paved private way into a public street without putting up any sign to notify travellers that the passageway was not a public one, and the plaintiff, who was not shown to have any right in the passageway unless as one of the public, while on his way to premises beyond those of the defendants, was injured by driving over a curbstone in the passage-

way hidden by snow, no active force being used against him, it was held that the plaintiff was at most but a licensee, and went upon the defendants' land at his own risk.''

Benson v. Baltimore Traction Company, 77 Md. 535, where it is said: ''Where the president of a corporation on the request of the principal of a school gives permission to a class of thirty or more students to visit the company's powerhouse, for the purpose of viewing and examining the works and machinery therein contained, such students are mere licensees, to whom the company is under no obligation to provide against the danger of accident.''

Sterger v. Van Sicklen, 132 N. Y. 499, where the court ruled: ''Where one enters upon the premises of another as a mere licensee, without any enticement or inducement, he does so at his own risk, and as to him the owner owes no duty of care or vigilance.''

McGill v. Compton, 66 Ill. 327, where it was ruled: ''Where two persons owning adjoining tracts of land, not separated by any division fence, for the purpose of avoiding the expense of erecting and maintaining such a fence, mutually agreed that the stock of each might pasture, in the fall of the year, on the land of the other, it was held that the agreement, in the absence of a special contract to that effect, imposed no liability on the parties to protect from injury the stock of one while on the land of the other, as, where there was a 'slough well,' on the premises of one, around which there was no protection, and a horse of the other fell into the same and was drowned, the owner of the well was not liable for the injury.''

In Evansville and Terre Haute Railroad Company v. Griffin, 100 Ind. 221, the court declared the law as follows: ''Where one merely permits others, for their own accommodation to pass over his lands, he is under no legal duty to keep them free from pitfalls or obstructions which may result in injury.''

In De La Pena v. Railroad, 74 S. W. (Court of Civil Appeals of Texas) 58, where the plaintiff, for the purpose of getting around defendant's cars, which obstructed certain street crossings, took a path running along the right-of-way, which was generally used by the public with defendant's knowledge and acquiescence, and broke his leg by stepping into a hole or open drain, it was held that he was a mere licensee, to whom defendant owed no duty to keep the path in a safe condition.

In the case of O'Brien v. Western Steel Company, 100 Mo. 182, the court said: "An employee of defendant familiar with the construction of its elevator used in its business only for transporting material, and who rides thereon under an implied license for his own pleasure and convenience, can only require of defendant the exercise of ordinary care in its operation." That as a mere licensee to use the elevator, he accepted whatever risk was incident to the construction and operation of the elevator.

We think the uncontradicted evidence clearly shows that plaintiff had only an implied license to pass over the grounds; that she was there merely by the acquiescence of the defendant and not by its invitation; that she cut across lots for her own convenience. In such circumstances the defendant, according to all the authorities, owed her no duty to keep its grounds in a safe condition for her to walk over and is not liable to respond in damages for her injury. The judgment is therefore reversed. *Reyburn* and *Goode, JJ.,* concur.