ALLEN N. ROE, a minor, by EDWARD A. ROE, his next friend, Appellant, v. ST. LOUIS INDEPENDENT PACKING COMPANY, Respondent.

St. Louis Court of Appeals. Opinion Filed January 6, 1920.

1. **NEGLIGENCE: Licensee: Invitee: Visitor to Packing Plant for His Own Benefit a Licensee.** Where plaintiff, a member of an observation class of students, was merely permitted an opportunity to go through the several departments of defendant's plant at the special request of the instructor of their class, and it appears that the sole object of the visit was the instruction of the students and not for any business of the defendant, *held* that plaintiff must be regarded as a bare licensee and not as an invitee.

2. ———: ———: **Duty of Owner of Premises Toward Licensee Defined.** Packing plants such as that conducted by the defendant can in no wise be viewed as places of public entertainment, and those who obtain permission, out of curiosity or desire to instruct themselves as to the processes of manufacture, to visit such plants, must take the premises as they find them; such visitors being bare licensees, they enjoy such license with its concomitant perils and subject to the risk of pitfalls or other obstructions incident thereto, the owner being liable only for concealed or hidden traps, etc., put out to injure them, or any form of willful, illegal force used towards them.

3. ———: ———: **Failure of Owner of Packing Plant to Warn Licensee of Danger Not Negligence.** Failure to warn plaintiff that a crane was about to be moved toward him or to take any precaution to

avoid plaintiff being struck by such crane or from falling into a vat of scalding water as he endeavored to prevent being struck, where plaintiff saw the approaching crane when it was some thirty feet from him and had previously watched the operation of the crane and had allowed it to pass over him a short time before, when he was standing in another part of the same room, and it did not appear that defendant's employee, who was pushing the crane, acted willfully, wantonly, intentionally, or recklessly in doing his work, but was doing the work of that particular department in which plaintiff stood at the time he met his injuries, in the ordinary and usual manner of conducting same, *held* that plaintiff, being a bare licensee, failed to make out a case for the jury.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. William T. Jones,* Judge.

AFFIRMED.

*John W. Drabelle* and *Watts, Gentry & Lee* for appellant.

(1) Even if plaintiff was a bare licensee on the defendant's premises, as to whom defendant did not owe the duty to keep its premises in reasonably safe condition, the court should not have non-suited him for the evidence tended to show that defendant actively injured him—led him into a trap by conducting him into a dangerous place and impliedly assuring him that there was no danger and then, knowing he was on the brink of the hot water tank, running a crane right at him in a way calulated to make him fall into the vat of hot water. Under such circumstances, the duty to warn and to refrain from actively injuring him in a negligent manner after his presence was actively known, existed, and its breach was actionable. Barry v. Railroad, 92 N. Y. 289, 44 Am. Rep. 377; Brinilson v. Railroad Co., 144 Wis. 614; Railroad Co. v. McDonald, 152 U. S. 262; Schmidt v. Mich., etc., Co., 159 Mich. 308; Morgan v. Railroad, 228 · Mo. 56; Ahnefeld v. Railroad, 212 Mo. 280; Keim v. Gilmore & P. Railroad Co., 23 Idaho, 511; Thompson v. Railway Co., 243 Mo. 336;

Railway Co. v. Balthrop, 167 S. W. 246; M. K. & T. R. R. v. Schroetter, 134 S. W. 826; Hartman v. Muehlebach, 64 Mo. App. 565; Escanaba Mfg. Co. v. O'Donnell, 212 Fed. 648. (2) Plaintiff was not a bare licensee. He was an invitee. Mutual profit was to be had by defendant and plaintiff by reason of the visit plaintiff made to the plant. Hence defendant owed plaintiff the duty to exercise ordinary care for his safety; but it did not do so, and injury resulted. Such a duty toward an invitee always exists, and liability exists where its breach results in injury. Glaster v. Rothschild, 221 Mo. 180; Becherman v. Kortkamp Jewelry Co., 175 Mo. App. 279; Welch v. McAlister, 15 Mo. App. 492; Woods v. Railroad, 165 Mo. App. 192; Kean v. Schoening, 103 Mo. App. 77; Nephler v. Woodward, 200 Mo. 179. (3) The question of plaintiff's contributory negligence, pleaded in the answer, was for the jury under the evidence. The court could not declare as·a matter of law that plaintiff was negligent in stepping into the hole. Beckerman v. Kortkamp Jewelry Co., 175 Mo. App. 279; Bennett v. Rothschild Bros. Hat Co., 144 Mo. App. 612; Lattimore v. Light and Power Co., 128 Mo. App. 37; Coffer v. Carthage, 200 Mo. 616. (4) A new trial should have been granted, and it was error to refuse to grant it.

*Kelley & Starke* for respondent.

(1) Plaintiff was a bare licensee and defendant owed him no duty except not to wantonly, wilfully or intentionally injure him. Kelly v. Benas, 217 Mo. 1, 9; Glaser v. Rothschild, 221 Mo. 180, 184; Barry v. Calvary Cemetery Assn., 106 Mo. App. 358, 365; Ward v. Kellog, 164 Mo. App. 81; Shaw v. Goldman, 116 Mo. App. 332, 340; Straub v. Soderer, 53 Mo. 38, 43; Davis v. Ringolsky, 143 Mo. App. 364, 370; Behre v. Hemp & Co., 191 S. W. 1038; 29 Cyc. (451 (B); Benson v. Baltimore Traction Co., 77 Md. 535; Weaver v. Carnegie Steel Co., 223 Pa. St. 238; Indian Refining

Co. v. Mobley, 134 Ky. 822; Roche v. American Ice Co., 125 N. Y. S. 323; Norris v. Contracting Co., 206 Mass. 58; Fitzpatrick v. Glass Co., 61 N. J. L. 378; Weitzman v. Barber Asphalt Co., 190 N. Y. 452; O'Brien v. Railroad, 209 Mass. 449. (2) Although plaintiff had obtained permission to enter defendant's premises, it was to gratify plaintiff's own curiosity and for his sole benefit. Defendant derived no advantage or benefit whatsoever therefrom. Plaintiff, therefore, was a bare licensee and not an invitee. (See authorities cited under Point 1.) (3) The record in his case shows that plaintiff was guilty of contributory negligence, which bars a recovery in this case, in that he failed to obey instructions and keep in the company of his instructors, Bevis and Flory, who obtained permission from defendant to take plaintiff and the other boys through defendant's plant. (4) Plaintiff's amended petition fails to state a cause of action in that, after alleging facts to show that plaintiff was a licensee, it fails to allege any facts showing, or tending to show, that defendant wantonly, wilfully or intentionally did any act or thing to injure plaintiff. Kelly v. Benas, 217 Mo. 1, 9; Glaser v. Rothschild, 221 Mo. 180, 184-5; Ward v. Kellog, 164 Mo. App. 81. (5) There being neither allegation nor proof of wantonness or wilfulness or intentional injury by the defendant, and it further appearing that plaintiff was injured thorough his own contributory negligence, the action of the trial court giving a peremptory instruction for the defendant was proper. (6) The cases cited by the plaintiff where the humanitian doctrine was invoked are not in point for the reason that in the case at bar there was neither allegation or proof that defendant had the last clear chance to avoid the injury. Castle v. Wilson, 183 S. W. 1106; Wilder v. Railroad, 164 Mo App. 114, 120-1. (7) The cases cited by plaintiff, attempting to distinguish between active and passive negligence, are not entitled to any consideration because: (a) the Appellate Courts of Missouri have not recognized

this distinction; (b) The decisions by courts in the
States which recognize such distinction are not clear
or harmonious; (c) such decisions have been criticized
as illogical.

BECKER, J.—This is an action for damages for
personal injuries, brought by plaintiff, a minor, through
his next friend, against the defendant packing company,
for injuries sustained by falling into a thawing vat con-
taining hot water, in the ice plant of the defendant, at
a time when plaintiff, together with a number of other
boys forming a class of instruction in the Young Men's
Christian Association of St. Louis, was being taken
through the defendant's plant by the instructer of his
class.

At the close of plaintiff's case, upon the court
indicating that it would give the jury a peremptory
instruction to find for the defendant, plaintiff took
an involuntary nonsuit with leave to set same aside.
In due course plaintiff filed his motion to set aside said
involuntary nonsuit and upon same being overruled
plaintiff appeals.

It is not necessary for the purpose of this case
to set out the pleadings or the contents thereof, it will
suffice, after we have set forth the statement of facts,
to briefly advert to the several assignments of negli-
gence.

The record discloses that plaintiff, a minor of about
the age of fifteen years, in the month of July, 1916, was
a member of the boy's department of the Young
Men's Christian Association, and together with a large
number of boys about his own age, was a member
of what is designated in said association as an Observa-
tion Class, the purpose of which was the instruction of
the said boys by taking them to visit various manufac-
turing plants in the city of St. Louis and thus enable
them to see various processes of manufacture carried
on.

The instructor in charge of the said class wrote to the general manager of the defendant company requesting permission, "to bring a group of about forty boys to go through your interesting plant," specifying the day on which it was intended to bring the boys. The general manager replied by letter to the effect that "it would be entirely satisfactory" to the defendant. Thereupon the instructor in charge of the class, together with his assistant, accompained sixty-one boys to the manufacturing plant of the defendant where the general manager furnished them an employee to show them through the different departments. After the boys had been shown through the cattle, hogs, and sheep killing departments they were taken to the ice manufacturing plant owned and operated by the defendant, and particularly into a large room wherein, by machinery in connection therewith, ice was manufactured. This room was filled with cans covered with wooden tops so arranged that the wooden tops of the cans formed what might be termed a continuous floor.

The process of making ice required that water be put into these cans, the wooden lids then placed upon them, and the water in the cans frozen. After the water had frozen solid in  the cans the wooden tops would be removed and a chain from a crane would be hooked onto the can containing the frozen block of ice and the can hoisted into the air and pushed to one end of the room where the can would be submerged into the thawing vat or tank of hot water which was built into the floor for the purpose of thawing the ice from the sides of the can so as to loosen it sufficiently so that the ice could be dumped from the can into a nearby chute leading to the store room.

The crane used for lifting the cans was suspended from an overhead rail and was operated by one of the employees pushing it from place to place as was necessary in carrying on the work.

According to the testimony most favorable to plaintiff, upon entering this ice room from the sun

light of out of doors one would   experience difficulty in seeing distinctly any small opening in the floor, but that after remaining in the room long enough for the eyes to become accustomed to the change, objects could be fairly well seen therein.

In making the tour around the plant the boys had proceeded two by two in column file and carrying out the general plan, as the boys filed into the ice room the instructor, with perhaps the group of boys form- in the first half of the column, proceeded across the ice room to the north end thereof while the assistant instructor stayed near the door at the south entrance to the room with the remainder of the boys. It appears that though the instructor had on two previous occa- sions visted the plant with a group of boys he was not aware of the thawing vat in the floor of the room, of which, however, he testified that it was "off to one side of the path that I followed going to the end of the room. The hole or vat was about eight or ten feet from that pathway."

According to plaintiff's own testimony, when he en- tered the ice room by ascending three or four steps con- necting with the door at the south end of the ice room, he walked across to the north end thereof to examine some pipes that were covered with ice, after which he started to return to the south end of the room when he saw the crane coming along toward the pipes at the north end of the room. As the crane approached he "ducked so it would pass over me" that when he had gotten within a few feet of the south end of the room the "crane came back toward me from the north end. . . . When the crane got near me that time I ducked again and let it pass over me. . . . As I ducked I stepped into the hot water. Before I stepped I did not see the hot water there. No one had told me that there was a tank of water there." When plaintiff first saw the crane approaching him the second time it was about thirty feet from him. The plaintiff further testified that there were windows at the north end of the room

and that he saw the windows and was able to see the crane and the wooden tops of the cans which formed the floor, but as to whether there were electric lights in the room, which were burning at the time (that these lights were burning in the ice room had been testified to by the instructor and the assistant instructor, who were witnesses for plaintiff) plaintiff stated: ''I saw no lights. I will not say there were none burning. . . . I am not sure about the lights. I didn't see any.'' Plaintiff further testified that his eye sight was good.

There is no question but that the boy was badly burned, from his waist down, by the hot water.

As to the object of the visit to the defendant's plant, the instructor testified that it was ''purely educational, for the education of the boys themselves. . . . The class is conducted by the Young Men's Christian Association for the boys alone and not for any advertising purpose of the plant itself.'' The assistant instructor testified: ''I did not go over there nor did any of these boys go over to this plant for any benefit or profit in any way to the St. Louis Independent Packing Company. It was solely for the purpose of the education of the boys. The company did not derive any profit from it at all.'' Plaintiff himself testified: ''I went to this plant with a group of boys from the Young Men's Christian Association for my own curiosity and benefit. I did not go for any business of the Independent Packing Company. Arrangements were made for me to go. I did not go there to buy anything or do any work for them.'' The boy also testified: ''I was instructed to stay with Mr. Bevis (instructor) and Mr. Flory (assistant instructor).''

Examining plaintiff's petition we find that the assignments of negligence are that ''said defendant, through its said watchman, knowing of the presence of said unguarded vat of scalding water, and knowing that, by reason of the dimly lighted condition, of said room, and by reason of the lack of familiarity of the plaintiff, and the other boys composing said class,

with the condition of said premises, there was danger that plaintiff and others would fall into said vat of hot water and be injured, negligently and carelessly conducted said class, including the plaintiff into said dimly lighted room and to a point where there was great danger that some of said boys would fall into said vat of hot water, and negligently and carelessly failed to inform plaintiff of the presence of said unguarded vat of hot water and of the location thereof, and negligently and carelessly failed to caution and warn said plaintiff, so that he might avoid falling into said vat of hot water." And that "defendant was further negligent in that in said dimly lighted room, knowing of the presence of said boys at said place, the defendant negligently and carelessly caused said crane to move towards the place where said class were assembled, and thereby placed the plaintiff in a position of peril and in danger of being struck by said crane, and defendant negligently and carelessly failed to warn plaintiff that said crane was about to be moved toward him, and negligently and carelessly failed to take any precaution whatever to avoid plaintiff's being struck by said crane and to avoid his falling into said vat of scalding water, as he endeavored to escape being struck by said crane."

Appellant assigns as error the giving of the peremptory instruction to the jury to find for the defendant, and the overruling of plaintiff's motion to set aside the involuntary nonsuit.

In light of the record before us the crucial question in the case is whether or not the plaintiff was a bare licensee or an invitee. Learned counsel for appellant seriously contended that plaintiff was an invitee. He contends that the facts in this case show that "mutual profit was to be had by reason of the visit plaintiff made to defendant's plant. Hence plaintiff was an invitee and defendant owed him the duty to exercise ordinary care for his safety; but defendant failed to do so and injury resulted. Such a duty toward an invitee always exists and liability exists where its breach results in

injury.'' The trend of appellant's argument in support of this contention is that the merchant or manufacturer of today, throughout the country, by reason of keen competition has accepted advertising as one of the best means of increasing business; that a recognized, practical method of advertising and one of the best means for increasing business is to get the general public to visit a mercantile or manufacturing plant for the purpose of acquainting them with the modern hygenic system of conducting same as well as familiarizing the visitor with each department and the operation thereof; that such visits on the part of the public result in benefit to the company whose plant is thus inspected is generally admitted, though the benefit that may accrue to the company out of the visit of any particular individual ''may be long delayed.'' That undoubtedly in the instant case the boys of the Observation Class, of which plaintiff was a member, were impressed with the quality of the goods shown them and the process of manufacture they saw in various plants which they visited, and ''who can say that this means of advertising is not of benefit to the storekeeper and manufacturer upon whose premises the boys were invited to come? Not only will the boys themselves some day be customers ready to buy goods from some one, but will talk among their freinds and sound the praises of the things that impressed them as they went through the various establishments which they visited. This benefit does accrue and will accrue to those who have invited the boys to come upon their premises and such being the case the boys stood precisely in the same situation as does a customer who walks into a store to buy a ham, and an automobile or a gold watch. The one who keeps the premises and thus invites these boys, owes them a positive duty to exercise ordinary care to take care of them and provide for their safety whilst upon the premises.''

What might be the rule that should be applied to a case where the facts used as the hypothesis of appel-

lant's argument were established by the record in the case, namely, that the manufacturing plant openly advertised and extended an invitation to the public to visit its plant and for such purpose furnished employees to act as guides to such of the general public who accepted such ivitation, is a question which under the facts in this case it is not necessary for us to decide, for we have no such case before us.

Here plaintiff and his associate members of the Observation Class were merely permitted an opportunity to go through the several departments of the defendant's plant at the special request of the instructor of their class, and according to all of the testimony adduced on behalf of the plaintiff the sole object of the visit was the instruction of the boys. That such was the case is well exemplified in the words of the plaintiff himself, namely: "I went out to this plant with a crowd of boys from the Young Men's Christian Association for my own curiosity and benefit. I did not go for any business of the Independent Packing Company. . . . I did not go there to buy anything or do any work for them." In light of the undisputed testimony in this case it is clear to us that plaintiff must be regarded as a bare licensee and not as an invitee.

Among the authorities we find the case of Benson v. Baltimore Traction Co., 77 Md. 535, which is almost a "spotted mule" case with the one at bar. In that case the principal of the Baltimore Manual Training School addressed a note to the president of the defendant company seeking permission to have the graduating class visit the two power houses of the defendant company. That permission being granted plaintiff with some thirty other members of his class and some teachers of the school made a tour of inspection of the defendant's power houses, during the course of which the plaintiff fell into a vat or sink some two and one-half feet deep, containing boiling water, which vat was flush with the floor and uncovered, and sustained injuries for which he sought to recover damages from the defendant. An

employee had been set apart for conducting the said boys through the power houses but before the boys had completed their tour of inspection this employee left them with instructions that they look out for themselves, however he gave them no warning of any particular dangers. In the course of the opinion the court says:

"It certainly was not for the benefit of the appellee that the visit was made, but it was clearly a mere license from the appellee assenting to the visit of the appellant and his school-mates to an examination of the works and machinery in the power houses for the purpose of gratifying their curiosity, or of improving their knowledge of the workmanship of the machinery and of the manner in which such power was applied in moving the cars upon the streets of the city. There could not have been, under these circumstances, any possible opportunity of misconception as to the intention of the respective parties. Nor do we perceive where any benefit could have accrued to the appellee by a visit of these young men on the occasion mentioned. . . . The vat or sink in question was one of the appliances in use by the appellee at the time of the happening of the accident for the purpose of aiding in the accomplishment of the work to be done, and was not placed there as a man-trap. . . . The case in the record presents a bald case of 'permission asked and leave granted.' There is no privity of relationship between the parties. The appellant was not in the power house by virtue of any right there. He only escapes being a trespasser because of the appellee's assent. Permission involves leave and license, but bestows no rights."

"It has been earnestly contended that by the admission of the appellant to the power house in the man or stated, a duty was thereby imposed upon the appellee to guard the appellant from the dangers of said vat (by warning him of its existence or by covering the same so as to make his passage through said premises reasonably safe). In this we do not concur. The vat was, apparently, a part of the useful appliances connected with the

purposes for which the power house was constructed, and was, as we have already said, in no proper sense a man-trap. The appellee was under no obligation to take one of its employees from its work to conduct the appellant and his school-mates and their teachers through the power house; nor was the appellee required to make alterations in the manner in which it was accustomed to conduct its business in order that these young men might go with safety through the building. They were under the control and direction of the teachers who accompanied them, and the appellee might have reasonably inferred that they were sufficiently cared for. Even though the guide had continued with the class, there was no reasonable guaranty that one of these thirty boys would not have fallen into the selfsame vat.''

"The principal of the school had, doubtless, some conception of the character of the machinery and appliances contained in the power house, otherwise he would scarcely have sought admission, and, if there was negligence anywhere, it consisted in bringing thirty-odd boys at one time to a building filled with dangerous machinery.''

The Benson case, supra, is cited with approval in Barry v. Cemetery Ass'n., 106 Mo. App. 358, 80 S. W. 709, and it likewise meets with our approval. By no reasonable inference, from the facts as they appear in the record before us, could the defendant be viewed as having sought to entice, lure or induce plaintiff to visit the plant in question. Packing plants such as that conducted by the defendant can in nowise be viewed as places of public entertainment and those who obtain permission, out of curiosity or desire to instruct themselves as to the processes of manufacture, to visit such plants must take the premises as they find them. They are bare licenses and enjoy such license with its concomitant perils and subject to the risk of pit-falls or other obstructions incident thereto, ''the owner being liable only for concealed spring-guns or other hidden traps put out to injure them, or any form or wilful,

illegal force used toward them.'' [Kelly v. Benas, 217 Mo. 1, 116 S. W. 557; Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1, and cases therein cited.]

As to the assignment of negligence in plaintiff's petition, that the defendant negligently and carelessly caused its crane to be moved toward the place in which plaintiff stood in a position of peril and in danger of being struck by the crane, and that the defendant was negligent in failing to warn the plaintiff that the crane was about to be moved toward him, and was negligent in failing to take any precaution whatever to avoid plaintiff being struck by the crane, and to avoid plaintiff falling into the vat of scalding water as plaintiff endeavored to prevent being struck by the crane, it is sufficient to say that the petition contains no allegation, nor is there any evidence to base an allegation upon, that defendant's employee, who was pushing the crane, acted wilfully, wantonly, intentionally or recklessly in doing his work. It is clear from the record that defendant was doing the work of that particular department, in which plaintiff stood at the time he met with his injuries, in the ordinary and usual manner of conducting same. Furthermore, according to plaintiff's own testimony he saw the approaching crane when it was distant some thirty feet from him, and he had previously watched the operation of the crane and had allowed it to pass over him a short time before when he was standing in another part of this same room. These facts, when taken in connection with the conclusion arrived at by us above, namely, that the plaintiff was a bare licensee, clearly fail to make out a case for the jury.

While we sympathize with plaintiff for the painful injuries that were sustained by him, yet it is beyond question but that the action of the learned trial judge in directing a verdict for the defendant is sustained both by reason and the great weight of the authorities. The judgment is accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.