**John H. ARGUS, Plaintiff-Appellant,**

v.

**Fritz MICHLER and the Texas Company, Defendants-Respondents.**

**No. 30714.**

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

Edward F. Downey, Paul E. Dixon, Lawrence E. Ehrhart, William B. Kelleher, St. Louis, for plaintiff-appellant.

Morris E. Stokes, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for defendants-respondents.

GEORGE P. ADAMS, Special Judge.

Plaintiff-appellant sought recovery in the sum of $10,000 for injuries he received when he fell in some oil on a driveway of a filling station operated by defendant-respondent Michler. Originally joined as defendant, the Texas Company, owner and lessor of the premises, obtained a directed verdict at the close of plaintiff's case in chief. Reference to "defendant" will, therefore, mean defendant Michler only. Following a jury verdict in favor of said defendant, plaintiff appeals.

Plaintiff's sole ground for reversal is his attack on Instruction No. 3, given at the request of defendant, relative to plaintiff's status while on defendant's premises.

Since defendant prevailed below, and in view of the fact that we find no reversible error, no detailed review of the evidence pertaining to the issue of negligence need encumber this opinion. Suffice it to say that considering the evidence "in the light most favorable to plaintiff * * *," and according him the "benefit of all supporting inferences fairly and reasonably deducible * * *" therefrom, and disregarding "defendant's evidence except insofar as it may aid plaintiff's case. * * *" La Plant v. E. I. Du Pont De Nemours and Company, Mo.App., 346 S.W.2d 231, 234(1), the jury could have found that plaintiff was a business invitee on the premises who was injured when he slipped and fell in a pool of oil or grease that had dripped from an automobile on the concrete driveway 6 to 8 feet outside one of the doors to defendant's filling station building; that such pool constituted an unsafe condition which had existed for at least 6 hours; that such condition was constructively known to defendant and was negligently suffered to exist without being cleaned up (a task requiring 30 seconds); and that plaintiff had no knowledge or notice of such condition. Becker v. Aschen, 344 Mo. 1107, 131 S.W.2d 533, 539(14). The issue of plaintiff's right to recover was properly submitted to the jury and defendant's motion for a directed verdict at the close of all the evidence was correctly overruled.

No instructions on the question of plaintiff's contributory negligence were offered by defendant and no such issue is made here.

No claim was made below, nor is any now asserted, that defendant's negligence was of that degree that would render him liable to plaintiff if he were a mere licensee ("* * * wantonness, or some form of intentional wrong or active negligence * * *"), Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W.2d 260, 262(1).

If plaintiff was entitled to recover, therefore, he must have been a business invitee to which defendant owed the duty to use reasonable care to prevent injury.

The evidence touching plaintiff's status is practically undisputed.

Defendant operated an automobile filling station at the southeast corner of West Florissant and Chambers Road in St. Louis County, where he had tires for sale.

Plaintiff and his wife resided on Chesley Drive in Dellwood, about one-half mile from defendant's station.

On January 10, 1959, about 6:00 P.M., plaintiff came from his work in downtown St. Louis and got off his bus in front of defendant's station. He intended to call his wife to come get him in the car. A public telephone was located in a booth on the northeast corner of the intersection. Plaintiff intended to cross the street and use this phone. However, someone was using it. He waited about five minutes for that person to finish. He remembered that he had used a phone in defendant's station before. He decided he wanted to do some shopping around for tires and went to defendant's station to use the phone to call his wife. He first decided to do some tire shopping right at the time when he couldn't get into the phone booth across the street. If it hadn't been for the fact that the phone in the booth was busy, he possibly would not have gone to defendant's station that evening.

On the way to defendant's station, plaintiff fell. After he fell, he stayed outside the station building five or ten minutes when he went inside and called his wife and asked her to pick him up at an ice cream shop across the street from defendant's station. In five to fifteen minutes, plaintiff's wife arrived and he went across the street where she picked him up. They drove back to defendant's station and plaintiff showed her where he fell. Paintiff never asked anyone at defendant's station about the tires or the prices of tires.

Plaintiff testified he had been in defendant's station before on "just several occa-

sions. Not on a regular basis." Defendant testified that he did not remember ever seeing plaintiff in the station before.

All of the testimony relating to the purpose of the telephone located in defendant's station is found in the following portions of the cross examination of defendant:

"Q. Well, Mr. Michler, this phone that you had in your filling station on the night of January 10, '59, that was not the type of phone that you have in your home, was it? I mean, in other words, this was a type of phone that you actually put money in to use, isn't that right? A. That's right.

"Q. And do you get some sort of remuneration from the telephone company for having that phone in there? A. No, sir.

"Q. They don't pay you anything, do they? A. No, sir.

"Q. You keep that in there for your own use and the convenience of your customers? A. That's right.

"Q. Your answer is yes? A. Yes.

"Q. And you keep that in there for the use of your customers? A. That's right.

"Q. So that one of the reasons for having it there is someone might come in to use the phone and end up buying a set tires, isn't that right? A. That's right."

In his petition, plaintiff adopted his theory of the case, alleging, " * * * plaintiff entered onto defendants' aforesaid filling station premises to use the telephone and to inquire about the price of tires and was defendants' customer and was an invitee of defendants therein * * *."

Instruction No. 2, given at the request of plaintiff, submitted the issue of defendant's negligence on the theory that plaintiff was a business invitee, and to accord him the status of a business invitee the jury were required to find "that Plaintiff came onto the filling station premises as a member of the public intending to use Defendant Michler's public phone and to price tires and became an invited customer of Defendant Michler * * *."

Since it was conceded by the defendant that plaintiff used the phone, we are justified in assuming that the jury so found. Having, then, found against plaintiff under his Instruction No. 2, they must have concluded either, (1) defendant was not negligent under any theory, or, (2) plaintiff did not intend to price tires (a finding within their province even though plaintiff's testimony that he did intend to price tires was uncontroverted by any express testimony). Gould v. M. F. A. Mutual Insurance Company, Mo.App., 331 S.W.2d 663, 669-670(10).

Instruction No. 3, given at the request of defendant, is as follows:

"The Court instructs the jury that if you find from the evidence that plaintiff came onto the premises of defendant Michler's service station solely for the purpose of using the telephone for a personal call, and was not on said premises on business of a mutual interest to said parties, and was not there for any purpose connected with the business of defendant Michler, then your verdict shall be against plaintiff and in favor of defendant Michler."

On this appeal, plaintiff asserts error in the giving of Instruction No. 3, first, because "the applicable law relating to injuries sustained by those impliedly invited to business establishments, including filling stations, is not covered" by the instruction, and it was "susceptible to the interpretation that appellant was a trespasser"; and, second, because defendant was "bound by his testimony that appellant used the public telephone kept there to promote business and thereby was the invitee" of defendant and the instruction permitted the jury "to ignore the issues of liability" to plaintiff as an invitee.

As to the first contention, it can be conceded that insofar as the use of the phone alone was concerned, without an additional finding of some purpose "of mutual interest to the parties" or one "connected with the business of defendant," the instruction did cast plaintiff into the class of a licensee at best—with no evidence of a failure of defendant to respond to the duties imposed upon an occupier of land to a mere licensee.

In support of this position, plaintiff cites Hoffman v. Kroger Company, Mo.App., 340 S.W.2d 152; Becker v. Aschen, supra, and Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410. None of these cases aid plaintiff. In Hoffman, plaintiff had purchased groceries from defendant's store and was returning to her car on defendant's parking lot when she fell. In Becker, plaintiff was in defendant's filling station for the purpose of having the oil in his car changed and had, at defendant's direction, driven upon a grease rack and slipped as he was getting down from the rack. In neither case was there any issue over the status of the person on the premises—they concededly were business invitees. In the Happy case, plaintiff was on his way into defendant's store to buy a ladder when he fell into an elevator shaft. The Supreme Court held that plaintiff was a prospective customer and as such "* * * was an invitee in the sense that his approach to the store was for a purpose of interest and benefit mutual to plaintiff and defendant. .* * *" 213 S.W.2d 410, loc. cit. 414(3). So was plaintiff here if he went onto defendant's station intending to shop for tires.

The instruction does do what plaintiff says it does when applied solely to his entrance on the premises to use the phone. However, it does not contain the vice complained of when applied to plaintiff's entrance on the premises if he intended to price or shop for tires for under such circumstances he would be "on business of mutual interest to said parties" and for a "purpose connected with the business of defendant" and entitled to recover, as the instruction and the Happy case authorized.

Therefore, all of plaintiff's complaints are actually bottomed on the position that, irrespective of whether plaintiff went on to price or shop for tires, having gone on to use the phone, he became a prospective customer and a business invitee.

In the leading case of Glaser v. Rothschild, 106 Mo.App. 418, 80 S.W. 332, 221 Mo. 180, 120 S.W. 1, 2, 22 L.R.A.,N.S., 1045, the Supreme Court poses the problem involved in these cases, inquiring: "* * * Do the facts raise a duty, a breach of which is shown? * * *" As to mere licensees, the court continues, 120 S.W. on page 2: "* * * The general rule is that the owner or occupier of premises lies under no duty to protect those from injury who go upon the premises as volunteers, or merely with his express or tacit permission, from motives of curiosity or private convenience, in no way connected with business or other relations with the owner or occupier. * *" And "* * * A bare licensee (barring wantonness, or some form of intentional wrong or active negligence by the owner or occupier) takes the premises as he finds them. * * *" As to a business visitor, the court continues on page 3 of 120 S.W.: "But the situation, with reference to liability, radically changes when the owner invites the use of his premises for purposes connected with his own benefit, pleasure, and convenience. * * *" in which event the occupier's duty is to use ordinary care to prevent injury.

These general principles have been further refined in the cases of Gilliland v. Bondurant, Mo.App., 51 S.W.2d 559, 332 Mo. 881, 59 S.W.2d 679, 688, and Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W.2d 260, 262(2–4) by the requirement that the person's presence on the premises be of a "real benefit" to the occupier. In the Stevenson case it is summarized, 159 S.W.2d at page 263: "* * * Thus, the real test of the status of invitee (to whom the owner has the duty to take ordinary care to prevent his injury) is the purpose of his visit. See 20 R.C.L. 69, Section 60; 45 C.J. 812, § 221.

One cannot be declared the invitee of the person sought to be held liable, for failure to exercise due care to prevent his injury, unless he was there for some purpose of real benefit or interest to such person."

Defendant received no remuneration from the phone. He kept it for his own use and the use and convenience of his customers and because "someone might come in to use the phone and end up buying a set of tires."

The characterization of the phone as a true "public phone" is unwarranted by all the evidence. It was located inside the station building at a place where defendant could exclude members of the public who simply wanted to "use the phone." It was no more "public" than toilets or drinking fountains located on the premises might be.

Repeated references and emphasis to the fact that it was a "pay phone" are irrelevant. Since defendant received no pay or remuneration from it, it is the same as a "free" phone located on the premises for the use of defendant and for the use and convenience of his customers and one that might be used by someone who "might come in to use the phone and end up buying a set of tires."

Having failed to convince the jury that he came upon the premises "to price tires," plaintiff's right to the protection of a business invitee had to be based on his entry onto the premises to use the phone. There was no express invitation to plaintiff to come upon the premises to use the phone. There is no showing that there were any signs or emblems on the premises announcing the presence of a public phone from which an invitation could be implied. If, therefore, there was an invitation to plaintiff to come onto the premises and use the phone, it must have arisen by implication from the mere fact that the phone was located in the filling station.

What was the purpose of his coming onto the premises? It was to call his wife to come and get him—not at defendant's station, but at an ice cream shop across the street. It was for a purpose solely for his "own convenience" and certainly "in no way connected with business or other relations with the owner or occupier."

But, then, does the chance that he *might* be one who "*might* come in to use the phone and *end up* buying a set of tires" clothe him with the protection of a business invitee? If it does, it must be because his presence while using the phone was of "real benefit" to defendant.

The issue resolves itself down to the simple question of whether we are to say that the mere chance that a passer-by stopping in for his own personal convenience and using a facility maintained on the premises for the use and convenience of customers of the occupier, might "end up" making a purchase, is of such sufficient "real benefit" to the occupier that he must treat such person as a business invitee from the moment he enters the premises until he has completed his personal errand and left.

The maintenance of any facility, phone, toilets or drinking fountain, on the premises of a public place might once in awhile bring in a person who might end up buying something, and if this tenuous contingency is to be the foundation for imposing on the occupier the duty of treating such persons as business invitees, then we are engrafting onto the incidentals of the ownership of business property a burden that is unreal and unwarranted.

The Supreme Judicial Court of Massachusetts refused to do so in Brosnan v. Koufman, 294 Mass. 495, 2 N.E.2d 441, 104 A.L.R. 1177. In going onto defendant's premises to use a mail box to mail a personal letter, plaintiff passed within 8 feet of a cigar and fruit stand. In holding that plaintiff was not an "invitee or business visitor" the Court said of plaintiff's case, 2 N.E.2d at page 444: " * * * He has not shown that the mail box was intended for the use of the public generally, rather than for the use of the tenants of the building. It may be noted in this connection

394

that there is no testimony in the record that there was any sign on the outside of the building indicating to the public that there was a mail box within the building, from which an invitation to make use of the box could be implied. * * * It is not shown that the use of the mail box was for the common or mutual advantage of the defendant and the plaintiff, or that the defendant derived any revenue from its presence or had any direct pecuniary interest in its maintenance, from which it might be implied that he authorized the public having letters to mail to come on the premises to do so. Even though it appears that those using the corridor were not forbidden to use the mail box, such silence would import no more than a tolerance or license to make use of the mail box for personal convenience." As to plaintiff's contention that an invitation to enter could be implied from the presence of the cigar and fruit stand, the court held, 2 N.E.2d at page 444, that it was "immaterial that a cigar stand * * * [was] maintained in the corridor * * *."

The Iowa Supreme Court also refused to do so in Low v. Ford Hopkins Co., 231 Iowa 251, 1 N.W.2d 95, 99, where it held that if the purpose of plaintiff in coming upon defendant's premises " * * * was merely to use the lavatory, she would be but a licensee. * * *" Coming through the store, as plaintiff did in that case, to get to the lavatory, certainly subjected plaintiff to numerous opportunities to "end up" buying something.

Having come onto the premises solely for his own personal convenience, not in response to an express invitation nor in response to signs, emblems or other advertising impliedly inviting him to do so, plaintiff has the burden of showing that his presence on the premises would result in some real benefit to defendant. The mere possibility that in using this facility maintained by the defendant for the use and convenience of his customers, plaintiff might end up buying something is too speculative

to constitute a real benefit. An invitation to come onto the premises would not "naturally and reasonably" arise from such state of facts. Glaser v. Rothschild, supra [221 Mo. 180, 120 S.W. 3].

Under the evidence in this case Instruction No. 3 accurately declared the law and no error was committed in giving it.

Cases cited by plaintiff in support of his position in this connection are not in point.

In Andra v. St. Louis Fire Door Company, Inc., Mo.Sup., 287 S.W.2d 816, 821, the Supreme Court held that a party " * * is not entitled to go to the jury on a theory which impeaches his own testimony. * * *" Defendant's testimony relative to the chance that someone using the phone might end up buying tires was, as we have held, insufficient to make a jury issue. The theory of Instruction No. 3 was not, therefore, an impeachment of defendant's testimony.

In Haley v. Deer, 135 Neb. 459, 282 N.W. 389, defendant received 25% of the tolls in excess of $5.50 per month from the public pay phone on his premises. The mere use of the phone, therefore, was a present and real benefit to defendant.

In Murphy v. Fred Wolferman, Inc., 347 Mo. 634, 148 S.W.2d 481, plaintiff was a customer in defendant's store purchasing candy and the Supreme Court held she did not lose her status as an invitee when she went to a landing in the store to use a public pay phone kept by defendant for the convenience and accommodation of its customers.

In Main v. Lehman, 294 Mo. 579, 243 S.W. 91, 93(1) plaintiff " * * * was a customer at defendant's store * * *" and " * * * the toilet in question was allowed to be used by defendant's customers as well as by his employees * * *" and " * * * was therefore an invitee * *."

In Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045, plaintiff was asked by defendant to come to his office to discuss securities and while waiting to see

defendant, plaintiff asked to use a toilet. The court held, 120 S.W. at page 5: "* * * Obviously plaintiff did not go to defendant's store for his own convenience, profit, or pleasure. * * *" and that in using the toilet, where he was injured, plaintiff was an invitee.

The judgment is affirmed.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.