Irene CLARIDGE, Appellant,

v.

WATSON TERRACE CHRISTIAN CHURCH OF ST. LOUIS, a Pro Forma Decree Corporation, Respondent.

No. 54878.

Supreme Court of Missouri, En Banc.

July 13, 1970.

Rehearing Denied Sept. 14, 1970.

Hullverson, Richardson & Hullverson, John J. Frank, St. Louis, for appellant.

Robert E. Keaney, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for defendant-respondent.

MORGAN, Judge.

Plaintiff filed suit for damages for personal injuries suffered by her as a result of a slip and fall on the freshly waxed corridor floor of defendant church. She recovered a jury verdict and judgment for $10,000 on the theory her status on the church premises at time of injury was that of an "invitee." On motion of defendant, the trial court set aside the judgment in accordance with defendant's motion for a directed verdict on the sole ground that plaintiff's status at the time of her fall was that of a "licensee" and not of an "invitee," and the court further specified that in the event its ruling should be reversed on appeal, defendant's alternative motion for a new trial was overruled. Plaintiff appealed to the St. Louis Court of Appeals from which we sustained an application for transfer, and we now consider the case as on original appeal. Rule 84.05(h), V.A.M.R.

To avoid possible confusion, and for reasons we hope to make apparent, we point out that the instant case was tried prior to our recent opinion in Wells v. Goforth, Mo., 443 S.W.2d 155, in which the duty of a possessor of land to a "licensee" thereon was broadened by the adoption of the rule in 2 Restatement, Law of Torts, First, Section 342. The adoption of this new rule, for all practical purposes, makes the duty owed a licensee or an invitee by a possessor of land essentially the same, i. e., reasonable care to make the premises reasonably safe. However, a vital distinction remains as to what factual situation must prevail to create the duty, or in other words, the circumstances which must exist before the duty is imposed for the benefit of each. That is: (1) The duty is owed a licensee if the possessor of the land "knows" of the condition complained of, Wells v. Goforth, supra, whereas, (2) the duty is owed an invitee if the possessor of the land "knows, or by the exercise of reasonable care could discover," the condition complained of. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 228. However, as noted, this case was tried prior to Wells when a licensee, absent wanton or willful acts or active negligence by the possessor of land, took the premises as he found them. The parties recognize these possibilities: (1) If plaintiff was an invitee, the judgment should be reinstated, (2) If

she was a licensee, the order of the trial court should be affirmed or the cause remanded for another trial under the guidelines of Wells v. Goforth, supra, or (3) a determination that plaintiff did not, and could not, make a submissible case either as a licensee or an invitee.

Defendant, a pro forma decree corporation, owned and maintained a church in St. Louis. It consisted of two buildings, one newly completed and one old, connected by a corridor. Plaintiff's son, a charter member of the church, was also a member of the Board of Trustees and chairman of its building committee. He had supervised construction of the new sanctuary and the first service therein was scheduled for the day following the accident. Plaintiff appeared at the church on her son's special invitation to tour the new facilities. The invitation was extended for the reasons, as he testified: "I was proud of the building * * * and I was proud of the church and the congregation and I was very much interested in getting my mother to join our church." Together they toured different areas. To see the new furniture in the reception room or church parlor, they entered the corridor from the east. After looking, they started to walk back toward the east door from which they had entered the corridor. The plaintiff slipped and suffered such injuries that defendant does not question the reasonableness of the amount awarded by the jury. Upon entering the corridor, plaintiff had observed a "small damp spot" in the corner, but said, " * * * it looked dry where we were walking." While on the floor, plaintiff noticed a sticky substance like floor wax on her arm and dress. The custodian testified the new vinyl floor was "marked up" from construction and on the day of the accident he was to "strip the floor" of all marks. To do this, he had used a stripping solution in the water, mopped and scrubbed. and rinsed a "couple of times" and then applied a plastic type floor finisher. He said, "You do not buff the synthetic material until it's down forty-eight hours." He fur-

ther testified that he had locked the corridor doors and placed a warning sign on the west corridor entrance. Sometime between the completion of this work and plaintiff's fall, the minister of the church had walked in the general area and he said: "I came near to falling. It was slick. * * * I braced myself on the wall."

In Abernathy v. Sisters of St. Mary's, 446 S.W.2d 599 (1969), this court abolished the charitable immunity doctrine and held that non-governmental charitable institutions are liable for their own negligence and for negligence of their agents and employees acting within the scope of their employment. Abolishment of the doctrine was found applicable to churches in Garnier v. St. Andrew Presbyterian Church of St. Louis, Mo., 446 S.W.2d 607. Although the instant cause preceded the effective date of the latter case, defendant has not asserted any claim of immunity. The result is that the church, as the owner and occupier of the premises in question, is subject to all the duties and liabilities which are incident to the ownership and possession of real estate.

There has been no attack on the instructions as given, but to point up how the parties have delineated the ultimate question we mention two of them.

To clarify the use of the word "invitee" in her verdict directing instruction, plaintiff in No. 6 offered this definition—"The term 'invitee' as used in these instructions means one who is invited into the premises of the owner or occupier, by or through an invitation to the general public, for any purposes beneficial to the owner or occupier."

Defendant gave No. 7, an affirmative converse, which provided: "Your verdict must be for defendant Watson Terrace Christian Church if you believe that at the time of her fall plaintiff's presence upon defendant's premises was solely for the purpose of viewing the premises for her own pleasure, and not for any purpose con-

nected with the business of or of real benefit to defendant."

Thus, as shown by the instructions quoted as well as by the written briefs submitted and oral arguments before this court, the parties appreciate that their respective positions must stand or fall on the answer to one question. That is: absent the accident, did the church derive a legally recognized benefit from the invitation and presence of plaintiff on the premises? If it did, she would be under the law of this state an "invitee." Glaser v. Rothschild, Mo., 120 S.W. 1; Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679; Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410; Wolfson v. Chelist, Mo., 284 S.W.2d 447; Roe v. St. Louis Independent Packing Company, 203 Mo.App. 11, 217 S.W. 335; Argus v. Michler, Mo.App., 349 S.W.2d 389; Gruhalla v. George Moeller Construction Company, Mo.App., 391 S.W.2d 585. Some of the cases stress the "purpose" of the frequenter's entry, but this rather subjective approach is relevant only in so far as it tends to prove or disprove a benefit to the possessor of the land. Traditionally, the benefit required has not been restricted to an actual benefit but has included a possible or potential benefit. For instance, the customer in a store may shop but not buy. However, the possibility he may creates what is accepted as a legal benefit to the possessor. Such an economic approach provides a bases for distinguishing between a licensee and an invitee. The presence of the former is tolerated, while that of the latter is encouraged.

■ Finally, we approach the controlling question in this case. Was there a benefit to the church in plaintiff being there? In seeking the answer, we need not consider, nor try to characterize, any benefit by way of glorification in a religious sense that might flow to the church from the spreading of its teachings. However, it is an accepted fact that the attainment of that objective is made easier by the ownership of a church building or other edifice which necessarily requires money for construction and maintenance. The budget

called for is most often met by members of the congregation. Members, as such, are a necessity, and all are potential contributors to the common cause. As shown by the evidence, it was a continuing obligation of all members of the church to solicit and bring in other members. In furtherance of this end, defendant maintained an open-door policy whereby the church was open to persons of all races, creeds and colors between the hours of eight and five each day. As shown by that evidence which the jury apparently found to be true, plaintiff was present because of a special invitation extended for the purpose of encouraging her to become a member. Can it be said that under such circumstances she was a "licensee" whose presence was only tolerated by the church? We think not. Not only was she welcome, but her status as a potential member and future contributor provided a benefit to the church in an economic sense. That benefit so derived is not speculative but is comparable to, and no less than, that where the customer shops but does not buy. This was sufficient to give her all the required attributes of an "invitee." Any misgivings there might be against treating the church as are other possessors of land were put to rest or at least made legally insignificant by the recent opinion in Garnier v. St. Andrew Presbyterian Church of St. Louis, supra. A similar conclusion was reached by the St. Louis Court of Appeals in Weigel v. Reintjes, 154 S.W.2d 412. However, that court in Gruhalla v. George Moeller Construction Co., 391 S.W.2d 585, at least by implication, reversed its position. In any event, we have concluded that so long as we continue to classify by label those injured on the premises of another, Wolfson v. Chelist, Mo., 284 S.W.2d 447, plaintiff was at the time of her injury an "invitee."

Comment should be made that our conclusion is based upon the established law of this state, after however, considering the many cases of other states involving similar questions. Admittedly, there is a great divergence of opinion, not only as to the proper conclusion, but as to the reasons

therefor. Some states ignore the economic approach and follow an "invitation" theory; some, after abolishing the charitable immunity doctrine, seem to retain some qualms about recognizing the consequences; and others are required to follow statutes defining the status of frequenters of the property of others. All of such approaches may be seen from the many cases listed, discussed and catalogued in 80 A.L.R.2d at page 806 under Annotation: Church premises—injury—liability.

We next consider the further argument that plaintiff did not make a submissible case regardless of her status as an invitee. This contention is based on the assertion that the hazardous condition of the floor was open and obvious. As previously noted, the plaintiff testified it appeared to be dry where she was walking, although she had noticed a damp spot in the corner. An officer of the church testified that an hour after the accident, he had seen wet spots in the corridor, but he could not relate them in any way to the place where plaintiff walked or fell. A contributory negligence instruction was given, and this issue was resolved by the jury.

The order of the trial court setting aside the verdict and judgment for plaintiff and sustaining defendant's motion for a directed verdict is reversed; and the trial court is directed to reinstate the verdict and judgment for plaintiff in the sum of $10,000.

HENLEY, C. J., and FINCH, SEILER and HOLMAN, JJ., concur.

DONNELLY, J., concurs in separate concurring opinion filed.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.

BRADY, Special Judge, not sitting.

DONNELLY, Judge (concurring).

I do not believe a house of worship should be equated with a house of commerce. See dissenting opinion in Garnier v. St. Andrew Presbyterian Church of St. Louis, Mo.Sup., 446 S.W.2d 607, 608. However, I agree that the law announced in the principal opinion is an unavoidable consequence of the holding in the Garnier case. Therefore, I will say no more about it. I have no right, under the circumstances, to continue to array my judgment against that of my brethren on this Court. I concur.