### Jason ROSKOWSKE, et al., Plaintiffs–Appellants,

v.

### IRON MOUNTAIN FORGE CORPORATION, St. Louis County, and Wayne M. Roberts, Inc., Defendants–Respondents.

### No. 66225.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 1995.

Application to Transfer Denied
May 30, 1995.

Paul J. Passanante, Gray & Ritter, P.C., St. Louis, for appellants.

Joseph Swift, Brown & James, P.C., St. Louis, for respondent Iron Mtn.

Michael A. Shuman, Asst. County Counselor, Clayton, for respondent St. Louis County.

John A. Michener, Evans & Dixon, St. Louis, for respondent W. Roberts.

KAROHL, Judge.

Plaintiff, Jason Roskowske (Roskowske), appeals after summary judgment in favor of defendant, Wayne Roberts, Inc. (Roberts) on his claim for personal injuries. Roskowske

was injured on playground equipment manufactured by Iron Mountain Forge Corporation, purchased by St. Louis County and installed by Roberts under contract with the County. We affirm.

Simpson County Park playground was officially dedicated and opened to the public by St. Louis County on July 9, 1991. On August 14, 1991, Roskowske sustained injuries while playing on a "chain walk" at the playground. Defendant Iron Mountain Forge Corporation (manufacturer) designed and manufactured the equipment; defendant St. Louis County purchased it for installation; and Roberts installed it pursuant to a contract with St. Louis County. The contract required the installation of all playground equipment, including the chain walk, to be completed in accordance with manufacturer's specifications. The chain walk, when installed according to plan, consists of two vertical posts placed opposite each other, connected by two horizontal chains. One of the chains sits six to twelve inches off the ground, and the other is placed approximately five feet above the lower chain. An overhead bar is placed above the upper chain to support the structure. Roberts omitted the upper horizontal chain. It installed a horizontal bar in its place.

Roskowske was injured when he dismounted with a swinging motion from the horizontal bar of the chain walk. He landed on the lower chain, breaking his leg. Nine days later, on August 23, 1991, the County issued a Certificate of Substantial Completion to Roberts, which listed its "date of issuance" as June 12, 1991. Roskowske concedes that neither Iron Mountain nor the County was aware of the defective installation when the certificate was issued on August 23.

On July 17, 1992, a representative of Iron Mountain inspected the playground at the County's request. She determined the chains were installed incorrectly by comparing the physical installation with the instructions; only one chain was installed where the plans called for two. After the County learned the equipment was not installed in accordance with manufacturer's instructions, the County notified Roberts of the defect and demanded it rectify the situation immediately. When it failed to reply, the County hired someone else to repair the chain walk and other components of the equipment to comply with the installation instructions.

Roskowske sued Iron Mountain, the County, and Roberts. The County filed a third-party petition against Roberts seeking indemnity and contribution. Roberts then filed motions for summary judgment, based on the acceptance doctrine, on Roskowske's claim against it and Count I of the County's first amended third-party petition. Roberts also filed a motion for a separate trial on Count II of Roskowske's petition, which alleged plaintiff was a third-party beneficiary of the County–Roberts' contract. The trial court granted Roberts' motions for summary judgment and for separate trial. Roskowske's motion for revision of that order was denied. The judgments were ruled final for purposes of appeal. This appeal followed.

In his first point, Roskowske claims the trial court erred in granting summary judgment to Roberts based on the acceptance doctrine because (1) the County did not accept the playground equipment until nine days after he was injured and, therefore, the acceptance doctrine does not apply, (2) even if the acceptance doctrine applied, this case falls within the imminently dangerous exception to the doctrine, and (3) the acceptance doctrine does not preclude Roskowske's claims, because he was a third-party beneficiary of the contract Roberts breached.

 When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo* on a question of law. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* Because the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

■ The acceptance doctrine provides a contractor, after an acceptance by the owner of its work, is not liable to third parties who have no contractual relations with him, for damages subsequently sustained by reason of his negligence in the performance of his contract duties. *Gruhalla v. George Moeller Construction Co.,* 391 S.W.2d 585, 597 (Mo. App.1965). In the absence of formal acceptance, constructive or practical acceptance will suffice. *Id.* The burden is on the plaintiff to show there is no acceptance and contractor is still in control of the premises, particularly the area in which injury occurred. *Id.* at 598.

■ In support of his contention in subpoint one that the work had not been accepted as of the date of his injury, Roskowske relies on the fact that the County issued the Certificate of Substantial Completion on August 23, 1991, nine days after he was injured. However, the certificate explicitly states, "The Date of Substantial Completion is hereby established as *June 12, 1991.*" [our emphasis]. According to the certificate, that is the date the "construction [was] sufficiently complete, in accordance with the Contract Documents, so the owner may occupy the work or the designated portion thereof for the use for which it is intended." Thus, both the County and Roberts acknowledge the date of actual acceptance was June 12, 1991.

According to *Gruhalla,* a formal acceptance is not necessary. In *Gruhalla,* plaintiff fell in a recessed area in a dimly-lit vestibule of a church constructed by defendant. Although some work remained to be completed in various parts of the church, it had been in use for two months before plaintiff's injury occurred. While there had been no formal acceptance of the work, the owner had taken possession and begun using the church. This constituted a practical acceptance. In finding that the court should have directed a verdict for the contractor, the court noted that "the burden is on [plaintiff] to show that there has not been an acceptance and that the contractor is still in control of the premises, particularly the area in which she fell." *Id.* at 598.

Wayne Roberts, owner of Roberts, stated in his deposition he finished installing the

equipment in September or October 1990. The County admitted it accepted beneficial use of the playground on the date of substantial completion, June 12, 1991. In addition, the park was officially dedicated and opened to the public on July 9, 1991, and was used by the public thereafter. Roskowske offered no summary judgment fact to refute these facts. Thus, there is no genuine issue of material fact that the date of acceptance, formal or otherwise, was before the injury on August 14, 1991.

Roskowske's claim that the existence of a "punch list" precluded acceptance is without merit. In *Gruhalla,* there was a punch list with unfinished items, but they had nothing to do with the relinquishment of control to the owner or the area in which plaintiff was injured. The same is true here. No deficiency in the chain walk was ever noted in a punch list. The County did not request any changes be made on the chain walk before the injury occurred. In addition, Roskowske offered no evidentiary summary judgment facts to demonstrate the punch list items (even though entirely unrelated) were not completed by the day of injury. Finally, Roskowske did not offer facts to show Roberts retained control over the premises, even for purposes of rectifying the unrelated items on the punch list, at the time of his injury.

■ Roskowske argues that even if the County constructively accepted Roberts' work before August 14, 1991, the acceptance was rescinded when the County discovered defective installation. There is no law to support this contention. We reject the theory that after-the-fact rescission of acceptance would affect the application of the doctrine. If the owner could respond in that manner after notice of an injury, it would abolish the defense. After receiving a claim for personal injuries, any owner could and probably would rescind its prior acceptance in order to transfer or, at least, share liability. This would expose the contractor to liability for a condition it could not cure after owner acceptance.

■ In his second sub-point, Roskowske claims that if the acceptance doctrine is found to apply, this case falls within the imminently dangerous exception to the doc-

trine. This exception operates to impose liability on the contractor after acceptance where (1) the defect is imminently dangerous to others, (2) the defect is so hidden that a reasonably careful inspection would not reveal it, and (3) the contractor knows of the defect, but the owner does not. *Gast v. Shell Oil Co.*, 819 S.W.2d 367, 370 (Mo. banc 1991).

Roskowske claims the defect is similar to that in *Honey v. Barnes Hospital*, 708 S.W.2d 686 (Mo.App.1986), in which the imminently dangerous exception was found to apply. In *Honey*, a psychiatric patient was killed when he fell through a window installed by a contractor who failed to install proper locks. The court held the exception applied. It stated, "The window might appear locked when in fact it was unlocked. General contractor's employees inspected the window . . . and found it secure. That evening, however, decedent managed to open the window and commit suicide. One inference from this testimony is that a reasonably careful inspection would not disclose the defect." *Id.* at 700.

■ Without addressing the first or third prongs of the exception, we find there is no evidence that the second prong was fulfilled in this case. There is no summary judgment fact dispute that the defect was not hidden. The alleged defect was obvious. The use of a bar instead of a chain on the chain walk was in plain view, obvious to anyone. This was not true in *Honey*. The imminently dangerous exception does not apply here.

■ In Roskowske's third sub-point, he claims that the acceptance doctrine does not preclude his claims against the contractor because he is a third-party beneficiary to the contract between Roberts and the County. This point is without merit. Contracts are made for the direct benefit of the contracting parties. Other parties frequently derive some incidental benefit from the performance of the contract, but this gives them no right to enforce it. *Laclede Investment Corp. v. Kaiser*, 596 S.W.2d 36, 43 (Mo.App.1980). Moreover, the contract terms must clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract and have the right to maintain an action on the contract. *Id.* at 42. Though a third-party beneficiary need not be named in the contract, the terms of the contract must directly and clearly express an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third-party beneficiary is a member. *Id.* A strong presumption arises that the parties were not contracting for third persons. *Id.* Thus, the implication to overcome the presumption must be so strong as to amount to an express declaration. *Id.*

■ Here, there was nothing in the construction contract demonstrating an intent that the County and Roberts assumed a direct contractual obligation to a user or that they intended the user be able to sue on it. At most, Roskowske is an incidental beneficiary and therefore may not maintain an action on the contract. *See id.* at 43. Point denied.

In his second point, Roskowske claims the trial court erred in granting summary judgment, because "the acceptance doctrine is an outdated, inflexible legal doctrine which allows contractors to completely escape liability for even the most blatant negligence, and as such, should be discarded as inconsistent with Missouri's comparative fault system." Roskowske urges us to replace the acceptance doctrine with a "modern rule" of contractor liability, adopted in Restatement (Second) of Torts § 385 (1965):

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

Our Supreme Court considered this issue most recently in *Gast v. Shell Oil Co.*, 819 S.W.2d 367 (Mo. banc 1991). The court was urged to replace the acceptance doctrine with the "modern rule" enunciated in § 385. The court implicitly rejected that rule, and we will follow that decision. *Id.* at 371; *see also*

*Coleman v. City of Kansas City, Mo.*, 859 S.W.2d 141, 144–5 (Mo.App.W.D.1993).

■ Roskowske also claims the acceptance doctrine is inconsistent with the doctrine of comparative fault, which has been adopted in Missouri. However, this is not the case. If the doctrine of acceptance were rejected, it does not follow that the negligence of a contractor would be comparable with owner's negligence. Application of the doctrine recognizes the owner *may* become 100% liable in accepting work for which the contractor *would* have similar liability before acceptance.

Further, comparative fault has never been applied uniformly in Missouri law. It was adopted only "[i]nsofar as possible." *Gustafson v. Benda*, 661 S.W.2d 11, 16 (Mo. banc 1983).

■ Comparative fault does not apply to a case involving purely economic damages. *Chicago Title Insurance Co. v. Mertens*, 878 S.W.2d 899, 902 (Mo.App.E.D.1994). Assumption of risk is still a complete defense for injuries incurred in an athletic contest. *Martin v. Buzan*, 857 S.W.2d 366, 368–9 (Mo.App.E.D.1993). Only certain types of actions can be considered as comparative negligence in a products liability case. Section 537.765 RSMo Cum.Supp.1993. A party who has already settled with the plaintiff is not included in the apportionment of fault, *Schiles v. Schaefer*, 710 S.W.2d 254, 275–6 (Mo.App.1986), although the recovery is credited to defendants who refuse to settle. In light of this, we decline Roskowske's invitation to abandon the acceptance doctrine because it is inconsistent with comparative fault. Point denied.

We affirm.

SMITH, P.J., and WHITE, J., concur.