Patricia A. WILSON, Appellant,

v.

DURA–SEAL AND STRIPE,
INC., Respondent.

ED 104570

Missouri Court of Appeals,
Eastern District,
DIVISION FOUR.

Filed: March 21, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied April
27, 2017

Application for Transfer Denied
June 27, 2017

Heidi L. Leopold, St. Louis, MO, for appellant.

Joseph F. Callahan, Rebecca L. Van Court, St. Louis, MO, for respondent.

Gary M. Gaertner, Jr., Judge

## Introduction

Appellant Patricia A. Wilson (Wilson) appeals the trial court's summary judgment in favor of Respondent Dura–Seal and Stripe, Inc. (Dura–Seal) on Wilson's negligent construction claim. Wilson argues that summary judgment was improper because genuine issues of material fact

exist regarding whether Dura–Seal was in control of the premises at the time of Wilson's injury. We affirm.

## Background

In March of 2006, the Fox C–6 School District (School District) hired Dura–Seal by oral agreement to construct an asphalt overlay of a drive lane near the auditorium at one of the District's schools. Dura–Seal performed the work in August of 2006 and then sent an invoice to the School District, which the School District paid in September of 2006.

The parties agree that in paving the drive lane, Dura–Seal did not pave all the way to the curb, but left a "gutter area" between the road and the curb, resulting in the asphalt in the drive lane being taller than the gutter area in between the drive lane and the curb. Wilson offered evidence that the height differential was three to four inches.[1] No written specifications for the project were in evidence.

On November 3, 2006, Wilson was attending a school-sponsored function. On her way from the auditorium to the parking lot, Wilson fell when crossing the drive lane, sustaining injuries. She claimed it was the same drive lane paved by Dura–Seal, and that she fell as a result of the height differential between the gutter area and the new asphalt. There was evidence that sometime after this incident, the School District asked Dura–Seal to fill in the gutter area gap along at least part of the drive lane, and Dura–Seal did so. There was also evidence that Dura–Seal offered a one-year guarantee of its work, but no written terms of the guarantee were in evidence.

Wilson filed a premises liability claim against the School District, which in turn added Dura–Seal as a third-party defendant. Wilson then amended her petition to include a claim for negligent construction directly against Dura–Seal. Wilson settled her claim against the School District. Dura–Seal filed a motion for summary judgment on Wilson's claim against Dura–Seal, and the trial court granted Dura–Seal's motion. This appeal follows.

## Standard of Review

Our review of summary judgment is essentially *de novo*. ITT Commercial Fin. Corp. v. Mid–Am. Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom summary judgment was entered, according the non-movant the benefit of all reasonable inferences from the record. Id. A movant must show that there is no genuine dispute as to any material fact, and that he or she is entitled to judgment as a matter of law. Rule 74.04(c); ITT Commercial Fin. Corp., 854 S.W.2d at 380. A genuine dispute "exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." ITT Commercial Fin. Corp., 854 S.W.2d at 382.

## Discussion

Wilson raises four points on appeal. First, she argues that the trial court erred in granting summary judgment based on the acceptance doctrine because genuine issues of fact remain as to whether Dura–Seal completed the work and whether the School District accepted it. Second, Wilson argues that Dura–Seal's guarantee operated to extend Dura–Seal's liability to third parties for the duration of the guarantee, despite any acceptance by the School District. Third, Wilson argues that even if the

---

1. There were photographs in the summary judgment record, also included in the record on appeal, which clearly show this height differential.

acceptance doctrine applied, it should not defeat Wilson's claim here because an exception applies. Finally, Wilson argues that we should reject the acceptance doctrine as inconsistent with Missouri's comparative fault doctrine.

## Point I

First, Wilson argues the trial court improperly entered summary judgment because a genuine issue of material fact existed regarding whether Dura–Seal completed the work and whether the School District accepted it. We disagree.

In Missouri, "[a]fter [an] owner accepts a structure, the general rule is that a general contractor is not liable to persons with whom he did not contract." Gast v. Shell Oil Co., 819 S.W.2d 367, 370 (Mo. banc 1991). "In the absence of formal acceptance, constructive or practical acceptance will suffice." Roskowske v. Iron Mountain Forge Corp., 897 S.W.2d 67, 71 (Mo. App. E.D. 1995). "Acceptance of the work is attended by the presumption that the owner ... made a reasonably careful inspection of the work, knows of its defects, and so 'accepts the defects and the negligence that caused them as his own.'" Coleman v. City of Kansas City. Mo., 859 S.W.2d 141, 146 (Mo. App. W.D. 1993). Wilson bears the burden of showing that the School District had not accepted Dura–Seal's work and that Dura–Seal was still in control of or had a right to control the area where Wilson's injury occurred at the time of the injury. See Roskowske, 897 S.W.2d at 71.

Wilson's argument in this point is essentially that there is no evidence in the summary judgment record of the School District's acceptance of Dura–Seal's work. She notes there is no written acceptance or communication between the parties regarding completion of the work (besides the invoice Dura–Seal sent, which does not specifically say the work was complete), no evidence regarding whether the work met specifications, and no evidence that anyone performed an inspection of Dura–Seal's work. There was competing testimony from two Dura–Seal employees about whether it was an industry standard to pave all the way to the curb or to leave a gap or gutter area, and Wilson argues that this creates an issue of fact as to whether the job was completed. Wilson argues, moreover, that the fact that Dura–Seal performed additional work to close the gap in the gutter area after Wilson's injury showed Dura–Seal maintained control over the drive lane.[2]

However, it is not Dura–Seal's burden to prove acceptance; it is Wilson's burden to prove there was no acceptance. It was undisputed that Dura–Seal had not performed any work on the drive lane for at least two months before Wilson's injury and that the School District had paid Dura–Seal in full for the work. Dura–Seal returned to perform additional work only upon the School District's request. Here, the undisputed facts establish that the School District had possession and use of the premises, rather than Dura–Seal. See Gruhalla v. George Moeller Constr. Co., 391 S.W.2d 585, 598 (Mo. App. 1965) (plaintiff failed to establish ongoing construction in area where plaintiff was injured; owner had resumed use of disputed area and construction was completed). At such point, whether the initial completed work conformed to industry standards or specifications is not at issue because we presume the owner accepts and takes on

---

**2.** To the extent Wilson argues the one-year guarantee extended Dura–Seal's liability to third parties for injuries on the premises for the duration of the guarantee, we discuss this argument in Point II.

any negligence in construction.[3] See Coleman, 859 S.W.2d at 146.

■ A defending party can establish a right to summary judgment by showing "that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements." ITT, 854 S.W.2d at 381. Given the undisputed facts here, Dura–Seal established Wilson would not be able to prove that Dura–Seal was in control of the premises or had the right to control the premises at the time of Wilson's injury. Thus, the trial court did not err in granting summary judgment in this respect. Point denied.

### Point II

■ In Point II, Appellant argues the trial court erred in granting summary judgment because Dura–Seal guaranteed its work for one year, and thus Dura–Seal assumed greater liability to third parties than is commonly the case under the acceptance doctrine. We disagree.

While it is true that a contractor can assume greater liability to third parties than it would owe under the acceptance doctrine, Missouri courts have required that such obligation be clear from the parties' contract language. See Roskowske, 897 S.W.2d at 72 ("the terms of the contract must directly and clearly express an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third-party beneficiary is a member"); see also St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc., 589 S.W.2d 260, 270 (Mo. banc 1979) (finding liability where contract clearly intended to benefit third party). "A strong pre-

sumption arises that the parties were not contracting for third persons." Roskowske, 897 S.W.2d at 72.

Here, as there is no contract in evidence and the undisputed facts show that the parties did not have a written contract, there is no plausible basis in the record for overcoming the presumption and instead finding Dura–Seal agreed to extend its liability to third parties once the School District accepted its work. Thus, there is no genuine factual dispute precluding summary judgment in this respect. Point denied.

### Point III

■ In her third point, Wilson argues that the trial court erred in granting summary judgment as a matter of law because the undisputed facts established an exception to the acceptance doctrine existed here; namely, that Dura–Seal left the drive lane in an imminently dangerous condition. We disagree.

■ The imminently dangerous exception to the acceptance doctrine operates to impose liability on a contractor, even after the owner has accepted the contractor's work, under the following conditions: "where the structure was so defectively constructed as to be essentially and imminently dangerous to the safety of others; the defects are so hidden and concealed that a reasonable careful inspection would not have disclosed them, and these things are known to the defendants but not to those who accepted them." Gast v. Shell Oil Co., 819 S.W.2d 367, 370 (quoting Begley v. Adaber Realty & Inv. Co., 358 S.W.2d 785, 791 (Mo. 1962)).

---

3.  Thus, even assuming the construction was negligent, for which there is strong support given the photographs in evidence, the accep-

tance doctrine mandates that Dura–Seal's liability ends upon the School District's acceptance of the work.

■ Wilson argues that the defect here was only discoverable to a trained eye, and that those unfamiliar with paving standards would not have realized the problem created by the height differential. However, the exception requires that even a "reasonable careful inspection" would not have disclosed the alleged defect here. The undisputed facts show that the drive lane and gutter area were in plain view. In Roskowske, the contractor had installed playground equipment using a bar in one piece of equipment that called for a chain, and someone was subsequently injured playing on that piece of equipment. 897 S.W.2d at 70. This defect also would not have been discoverable to someone unfamiliar with the equipment's specifications, but this Court nevertheless found that the defect was "in plain view, obvious to anyone." Id. at 72. Similarly here, the road was in plain view and discoverable through inspection. The fact that there is no evidence of any inspection in the summary judgment record does not affect this conclusion because, as discussed in Point I, the undisputed facts established the School District was in control of the premises. See Coleman, 859 S.W.2d at 146 (where work accepted, whether inspection took place is "irrelevant to the proof of any material issue"). The School District paid Dura–Seal's invoice for the work in full and did not contact Dura–Seal again about this drive lane until after Wilson's injury.

The trial court did not err as a matter of law by failing to apply the imminently dangerous exception to the acceptance doctrine here. Point denied.

### Point IV

Wilson's final argument is that Missouri should no longer follow the acceptance doctrine. Wilson urges us to adopt the "modern rule" set forth in the Restatement (Second) of Torts, Section 385 (1965).

Other Missouri courts have considered this same argument to abandon the acceptance doctrine and have rejected it. See Gast, 819 S.W.2d at 371 (finding no inconsistency in that "[a]cceptance is still a significant event" even in cases following Restatement); Roskowske, 897 S.W.2d at 72–73 (noting Gast Court "implicitly rejected [modern] rule"). As an intermediate court of appeals, we are bound by Missouri Supreme Court precedent on this issue. Point denied.

### Conclusion

There is no genuine factual dispute in the summary judgment record regarding control of the premises. Because the School District accepted Dura–Seal's work, any defect in construction was in plain view, and there was no evidence in the summary judgment record that Dura–Seal agreed to extend its liability to third parties past the date of acceptance, Dura–Seal cannot be held liable for Wilson's injuries even given evidence of negligent construction here. Further, given the binding precedent of the Missouri Supreme Court, we are bound to enforce the acceptance doctrine. The trial court's judgment is affirmed.

James M. Dowd, P.J., concurs.

Kurt S. Odenwald, J., concurs.