

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| JOSEPH ZYGLER | ) | No. ED108543 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable David L. Vincent III |
| HAWKINS CONSTRUCTION, ET AL., | ) | |
| | ) | |
| Respondent. | ) | Filed: September 22, 2020 |

## Introduction

Plaintiff-appellant Joseph Zygler ("Appellant") appeals the entry of summary judgment on his negligence claims for defendant-respondents Hawkins Construction & Flat Work Contracting Co. ("Hawkins") and Deluca Plumbing, Inc. ("Deluca") ("Respondents"). Respondents were subcontracted by general contractor K&S Associates to work on a new government building in Wildwood, Missouri. Hawkins was hired to perform concrete work and Deluca was hired to perform plumbing work. Appellant was an employee of St. Charles Acoustics, the flooring subcontractor on the project. The issue here is a question of law: whether the acceptance doctrine applies to shield Respondents from liability.

Appellant raises six points on appeal – three points regarding Deluca's liability and three regarding Hawkins' liability. Appellant's arguments are parallel in Points I and IV, Points II and V, and Points III and VI. In Points I and IV, Appellant argues summary judgment was improper

because Respondents owed a duty of reasonable care to Appellant under a general negligence theory. Respondents contend they are protected from liability by the acceptance doctrine, an affirmative defense available to subcontractors under Missouri negligence law. Appellant argues the acceptance doctrine does not apply. In Points II and V, Appellant argues even if the acceptance doctrine applies, summary judgment was improper because genuine issues of material fact exist about whether K&S accepted Respondents' work before Appellant's injury. In Points III and VI, Appellant argues he was a third-party beneficiary of the contracts between K&S and Respondents and Respondents owed a heightened duty of care to protect Appellant from injury. Finding no genuine issues of material fact Respondents were entitled to judgment as a matter of law, we affirm.

## Factual and Procedural History[1]

In 2012, K&S constructed a government building for the City of Wildwood, Missouri. K&S subcontracted various construction tasks to several subcontractors. Three subcontractors relate to this appeal. K&S hired subcontractor Hawkins to perform concrete foundation and flatwork-related tasks on the project, Deluca to perform plumbing work, and St. Charles Acoustics to perform floor tiling.

This case concerns a workplace injury. On November 14, 2012, Appellant was doing floor tiling work on the project for St. Charles Acoustics. Around noon, Appellant was walking in an unlit hallway when his boot caught on a plumbing cleanout that protruded approximately ¾-1 inch from the concrete floor. Appellant tripped, injuring his ankle. Deluca installed the rough plumbing including the cleanout. Hawkins poured the concrete floor over the roughed in plumbing and around the cleanout. The cleanout had no warning signs or markers around it. Appellant says the

---

[1]Because this is an appeal of summary judgment, the facts are set forth in the light most favorable to Appellant's case.

cleanout was difficult to see because it was dirty and similar in color to the surrounding concrete. Appellant testified that in his experience on other job sites, plumbing cleanouts are sometimes marked with cones or rings to alert others to the possible tripping hazard.

Respondents claim they finished work on the area where Appellant was injured several months before the injury. Deluca alleges it finished rough in plumbing work in the hallway where Appellant was injured by April 27, 2012 and moved on to other finishing projects throughout the building. Hawkins alleges it finished its concrete work in the interior of the building by May 15, 2012 and performed outdoor work only after that date. Respondents argue K&S reviewed and accepted the quality and completeness of their work on the hallway several months before Appellant's injury. Respondents supported their assertions by submitting proof of payment from K&S for their work in the hallway, while noting other tasks that were uncompleted had not yet been paid.[2]

Appellant sued K&S on March 7, 2016. He then amended his petition to include Respondents on July 8, 2016. Appellant voluntarily dismissed K&S without prejudice on August 8, 2016. After discovery, Respondents moved for summary judgment on June 14, 2017. The trial court granted Respondents' motion on October 27, 2017. This appeal follows.

## Standard of Review

The standard of review on summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376. When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *Id*. (citing *Zafft v. Eli Lilly*, 676 S.W.2d 241, 244 (Mo. banc 1984)). This Court exercises great care in affirming summary judgment because doing so denies

---

[2]Respondents submitted affidavits signed by K&S president Thomas Kraska that certified Respondents' work in the hallway was complete and to K&S's satisfaction by no later than May of 2012.

the losing party its day in court. *Id.* at 377. We accord the nonmoving party the benefit of all reasonable inferences from the record. *Id*. at 376 (citing *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993)). We will affirm summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Germania Bank v. Thomas*, 810 S.W.2d 102, 105 (Mo. App. 1991).

## Discussion

Points I-III apply to Appellant's action against Hawkins and Points IV-VI apply to Appellant's action against Deluca. Points I and IV, II and V, and III and VI are parallel arguments. We will address Appellant's parallel arguments together.

### *Points I & IV: Whether the Acceptance Doctrine Applies*

In Points I and IV, Appellant argues Respondents negligently caused his injuries because (1) they owed a duty of care to protect Appellant from injury, (2) they failed to perform their duty, and (3) their failure was the proximate cause of Appellant's injury. Appellant also argues the acceptance doctrine should not shield Respondents from liability here because the doctrine applies only to cases involving premises liability, not general negligence. Appellant notes the single count of his amended petition alleged negligence and not premises liability. He argues the acceptance doctrine is irrelevant to the question of Respondents' liability.

Respondents argue K&S accepted and paid for their work on the plumbing cleanout six months before Appellant's injury. They further argue they had no control over the area at the time of the injury because they vacated the space to make way for other subcontractors to work, including Appellant's employer. Respondents argue the acceptance doctrine is a complete affirmative defense shielding them from liability.

4

## A. The Acceptance Doctrine

The acceptance doctrine is the principle that when a subcontractor completes work on a project or portion of a project and relinquishes control to the general contractor, the general contractor assumes responsibility for any defects in the work and "relieves the subcontractor of liability as to a third person." *Weber v. McBride & Son Contracting, Co.*, 182 S.W.3d 643, 644 (Mo. App. E.D. 2005). The purpose of the acceptance doctrine is to cut off subcontractor liability after they give up the right of control over their work and the general contractor holds the work out as its own, including defects. *Id.* at 644-45 (citing *Casey v. Hoover*, 89 S.W. 330, 334 (1905)). Under the acceptance doctrine, contractors are liable to third parties only if they had control or the right to control the premises at the time of the injury. *Coleman v. City of Kansas City, Mo.*, 859 S.W.2d 141, 146 (Mo. App. W.D. 1993).

Acceptance of a subcontractor's work can be proven by an overt act or by constructive or practical acceptance through the general contractor's control or use of the property. *Roskowske v. Iron Mountain Forge Corp.*, 897 S.W.2d 67, 71 (Mo. App. E.D. 1995). Acceptance need not be made formally. *Id.* (citing *Gruhalla v. George Moeller Construction Co.*, 391 S.W.2d 585, 597 (Mo. App. 1965)). If a plaintiff claims work was not accepted, the plaintiff must prove a lack of acceptance. *Wilson v. Dura-Seal and Stripe, Inc.*, 519 S.W.3d 479, 482 (Mo. App. E.D. 2017).

## B. The Acceptance Doctrine Applies Here

Here, Appellant's contention that the acceptance doctrine does not apply to subcontractors in negligence cases is contradicted by more than a century of case law in Missouri. Missouri courts have consistently applied the acceptance doctrine in negligence cases. See, e.g. *id.* at 482-83; *Weber*, 182 S.W.3d 644-45 (2005); *Singleton v. Charlebois Const. Co.*, 690 S.W.2d 845, 849 (1985); *Gruhalla*, 391 S.W.2d 585 (1965); and *Casey*, 89 S.W. 330.

Appellant relies first on *Daoukas v. City of St. Louis* to argue the acceptance doctrine should shield subcontractors from liability only if a plaintiff asserts a premises liability claim. 228 S.W.3d 30, 35 (Mo. App. E.D. 2007). This reliance is misplaced. Although *Daoukas* involved an independent contractor's liability to a third party, the acceptance doctrine was not at issue. *Id*. at 32-33. Instead, the independent contractor defense was at issue. *Id*. at 34. The independent contractor defense shields property owners from premises liability claims, but not from general negligence, for harm that occurs while a contractor controls the property. *Id*. Appellant's argument to limit the acceptance doctrine to premises liability is unsupported by *Daoukas* and therefore fails.

Appellant also argues Respondents' liability can be established solely by their participation in creating a dangerous condition. When the acceptance doctrine applies, a general contractor is presumed to have inspected the property for defects, assumed responsibility for the property, and relieved subcontractors of liability to third parties. *See Weber*, 182 S.W.3d at 644. Taking the facts in the light most favorable to Appellant, even if Respondents created a dangerous condition, K&S's inspection, payment, and control of the workspace is sufficient for the acceptance doctrine to apply.

Appellant cites *Killian v. Wheeloc Engineering* for the proposition that a subcontractor can be liable in negligence to a fellow subcontractor sharing a workspace with him. 350 S.W.2d 759, 761-62 (Mo. 1961). In *Killian*, the plaintiff carpenter was injured when he stepped on scrap that another subcontractor negligently placed in a common area where both were working. *Id*. The plaintiff won at trial and on appeal, with the Missouri Supreme Court finding the subcontractor owed a duty of reasonable care to the plaintiff. *Id.* at 762. Respondents correctly point out the defendant subcontractor owed a duty to his fellow worker in *Killian* because both were still

working on the same area of the same project and had not yet relinquished control of the workspace as required by the acceptance doctrine. *Killian* is therefore distinguishable and inapposite.

Similarly, Appellant relies on *Smith v. Dewitt and Assoc., Inc.* for the proposition that a subcontractor can be liable in negligence for injuries suffered by a plaintiff, even if the subcontractor was not in control of the area or dangerous condition at the time of the injury. 279 S.W.3d 220 (Mo. App. Ct. 2009). In *Smith*, the plaintiff was at a construction site when he fell through a wooden guardrail weakened by a subcontractor repeatedly removing and reattaching it. *Id*. at 222. The movement of the guardrail weakened it over time, eventually creating a dangerous condition that ultimately caused the injury. *Id*. *Smith* did not involve the acceptance doctrine – it was about whether the defendant contractors could prevail on summary judgment if they failed to refute the plaintiff's claim that one defendant loosened the guardrail. *Id.* at 225. Because the *Smith* subcontractors' work (1) had not been accepted by an authority such as a general contractor or the owner of the premises at the time of the injury and (2) the acceptance doctrine was not raised as a defense, *Smith* is inapposite. *Id*.

Appellant also relies on *Williamson v. Cox* to argue a subcontractor can be liable for negligence if an injury occurs after the subcontractor relinquished control of a workspace to the general contractor with the subcontractor-created dangerous condition still in existence. 844 S.W.2d 95 (Mo. App. S.D. 1992). In *Williamson*, a subcontractor tasked with cutting a hole in the roof of a building had to temporarily relinquish control of the area to the general contractor while the roof was being covered in plastic to keep out rain. *Id*. at 97. The subcontractor did nothing to warn other workers of the hole in the roof or mark it. *Id*. at 97-98. The general contractor's employee fell through the hole and was injured. *Id*. at 97. The employee recovered from the

subcontractor in negligence because the subcontractor caused the dangerous condition and did nothing to stop the plaintiff from walking toward the concealed hole. *Id*.

Appellant's reliance on *Williamson* is misplaced. Although the subcontractor temporarily relinquished control of the roof, the relinquishment of control regarding that area was not permanent and was not because the general contractor accepted his work as complete. The subcontractor's work in the area was only partially done – a hole had been cut in the roof but that was only the first step in preparing the roof to install an air conditioning unit. *Id*. *Williamson* is therefore distinguishable by its facts and inapposite because it did not involve the acceptance doctrine.

Appellant relies on *Woodall v. Christian Hospital NE-NW* for the proposition that when a plaintiff alleges "negligent conduct rather than the condition of the property itself, a negligence claim may lie." 473 S.W.3d 649, 658 (Mo. App. E.D.). In *Woodall*, an asbestos abatement contractor was working on an upper floor of respondent landowner's building and needed to visit the boiler room in the basement. *Id.* at 652. The contractor did not know the respondent's employees had removed the handrail on the stairs. *Id*. As a result, he fell and sustained serious injuries. *Id*. The court concluded a genuine issue of material fact existed about whether the landowner's conduct breached a duty of care and whether the breach was the proximate cause of the plaintiff's injuries. *Id*. at 658. *Woodall* is inapposite because it does not address the fundamental issue raised in Points I and IV: whether Respondents can be liable even though Appellant was injured after Respondents returned control of the workspace to K&S. Contrary to Appellant's assertion that the "issue of control of the premises is irrelevant", the right of a subcontractor to control and make changes to a workspace at the time of the injury is the reason

the acceptance doctrine exists and is fundamental to determining liability. *See Weber*, 182 S.W.3d at 644-45 and *Coleman*, 859 S.W.2d at 146.

The cases Appellant cites are also inapposite because of the timing of the injury. Appellant cites cases where subcontractors were liable because they owed a duty to others (1) while they were still working on their projects and (2) had not yet been released from their duties in the workspace where the injury occurred. The acceptance doctrine applies here because Appellant was injured after Respondents finished working on the hallway and were released from responsibility for that area six months before the injury. By the time Appellant was injured, Hawkins moved on to outside concrete work and Deluca moved on to unrelated "finish" plumbing throughout the building. Points I and IV are denied.

*Points II and V: Whether Summary Judgment on the Issue of Acceptance was Warranted*

Appellant argues even if the trial court was correct in concluding that the acceptance doctrine applies here, genuine issues of material fact remain about whether K&S accepted Respondents' work. Specifically, Appellant argues factual questions remain whether K&S formally or constructively accepted the work in the hallway where Appellant was injured. Appellant notes if a general contractor did not formally accept a subcontractor's performance, a factual question precluding summary judgment may exist if the facts rebut a presumption of acceptance by the general contractor.

Appellant relies on *Fattah v. Tran* for the proposition that a subcontractor does not relinquish control of a job site by simply leaving the workspace, particularly if there is shared access to the site, the general contractor has not inspected the subcontractor's work, or there was no communication between the general contractor and subcontractor after the subcontractor

9

finished working.[3] 2009 WL 6371480. Appellant analogizes *Fattah* to the facts here, arguing K&S never formally inspected or accepted Respondents' work. We disagree. In *Fattah*, the accident occurred within hours of the end of the subcontractor's work. The general contractor did not inspect the work or communicate with the subcontractor before the accident. Here Respondents produced proof they finished working in the hallway six months before the accident, K&S paid for that portion of the work, and authorized other workers to take over the space. *Fattah* raises no genuine dispute about whether K&S's conduct regarding Respondent's work in the hallway rose to the level of acceptance.

The record refutes Appellant's assertion "there was no evidence submitted to the Trial Court that a formal acceptance of [Respondents'] work . . . was ever made by K&S." Appellant's argument relies on the fact (1) Hawkins continued to lay concrete outside the building after completing work on the hallway and (2) Deluca continued its plumbing operations elsewhere in the building. Appellant also argues Hawkins' work outside the building caused one exit to be blocked on the day of the accident, forcing Appellant to use the hallway where he was injured.

These facts do not create a genuine issue of material fact about whether K&S accepted Respondents' work on the hallway. Thomas Kraska, the President of K&S, submitted an affidavit certifying Hawkins completed work on the interior of the project by May 14, 2012 and K&S acknowledged the project as complete on that date.[4] Similarly, Kraska certified by affidavit that Deluca completed its work on the hallway part of the project by April 27, 2012 and retained no control over the area after that day. K&S paid Respondents for their work on the hallway after it

---

[3]We note *Fattah* is an unreported circuit court case. Unpublished opinions, let alone unpublished circuit court opinions, are neither binding nor persuasive precedent in this Court. *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 691 (Mo. App. W.D. 2009).

[4]Kraska clarified in his deposition that Hawkins finished work a day later, May 15. This single-day difference is not material to our analysis.

was completed and before the accident. Respondents were only paid for segments of their work after each segment was completed to K&S's satisfaction. There is also no genuine dispute that Respondents retained no control over the area after they were paid. It is undisputed that other subcontractors – including Appellant's employer – took over the space after Respondents vacated it. Whether Hawkins' outdoor project blocked an exit is immaterial to acceptance because K&S's payment history shows the outside work and hallway work were separate, unrelated projects. Therefore, no reasonable inferences support Appellant's argument that Respondents' work was not "accepted" by K&S.

We conclude the trial court correctly determined there are no genuine issues of material fact regarding K&S's acceptance of Respondents' work. The trial court properly granted summary judgment. Appellant's arguments in Points II and V are denied.

*Points III and VI: Whether Respondents Owed Appellant a Heightened Duty of Care as a*

*Third-Party Beneficiary of Their Contracts with K&S*

Appellant's final points on appeal argue the contractual relationship between Respondents and K&S imposed heightened duties of care on Respondents. Appellant argues further that he was a member of the class owed a heightened duty as an intended third-party beneficiary. Respondents argue (1) Appellant was at most an incidental beneficiary of the contract, (2) the terms of the contract specifically preclude third party causes of action based on the contract, (3) Appellant cannot allege breach of contract on appeal because he pled no contract causes of action, and (4) the acceptance doctrine severs any duty owed by subcontractors to third parties after the subcontractor finishes working. Appellant's arguments are without merit.

A third-party beneficiary to a contract can sue on the contract if the contract terms express intent to benefit the third party or an identifiable class that the third party is a member of. *State ex*

11

*rel. William Ranni Assoc., Inc. v. Hartenbach*, 742 S.W.2d 134, 140-41 (Mo. banc 1987). Third party beneficiaries do not have standing if they are incidental beneficiaries to a contract, where they benefit only collaterally from the contract. *Id.* at 140.

Appellant claims he was a member of an expressly identified class under the terms of the contracts between K&S and Respondents. He directs our attention to language in Respondents' contracts that allegedly impose duties on Respondents to protect employees and *other persons* at the job site. (Emphasis added). In Appellant's view, he was an "other person" under the contract and was owed a heightened duty of care by Respondents as an intended beneficiary. Appellant suggests Respondents could have met their duty of care by posting danger notices or erecting safety barriers. Appellant argues Respondents breached their contracts with K&S by not taking steps to protect other persons after they vacated the workspace. Appellant argues there is a genuine issue of material fact about whether Respondents breached their contracts regarding their duty of care to third parties and asks us to reverse summary judgment on that basis.

Appellant's argument fails for several reasons. First, Respondents accurately note causes of action must be pled at the trial court and new issues cannot be raised on appeal of summary judgment. *LeBlanc v. Patton*, 247 S.W.3d 573, 576 (Mo. App. E.D. 2008). Appellant's First Amended Petition contains no contract claims or other claims based on his third-party beneficiary status. Appellant raised a contract claim for the first time on appeal. Appellant cannot raise this cause of action for the first time on appeal. *Id.*

Even if Appellant's argument could have been raised on appeal, it would fail. Appellant argues Respondents' duty to protect people on the job site made him an intended beneficiary under the contract. This interpretation is incorrect. Intended third party beneficiaries have a "right to maintain a cause of action for breach of contract even though the third party is not privy to the

12

contract or its consideration." *OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo. App. W.D. 1995). The question of intent is paramount and should be gleaned from the four corners of the contract. *Id.*

No reasonable interpretation of the contract between K&S and Respondents indicates intent to grant Appellant or those similarly situated a cause of action under the contract. Paragraph 27.3 of the contracts between K&S and Respondents state "[n]o provision contained in this Subcontract shall create or give to third parties any claim or right of action against K&S or Subcontractor in addition to those legally existing in the absence of such provision." As *OFW* makes clear, when the four corners of a contract indicate no intent to create new claims or rights of action for third parties, this Court will not create a right. *Id.* We find no reasonable inference supporting Appellant's assertion he was an intended beneficiary under the contract because the terms of the agreement directly contradict his claim. Appellant cites no authority to suggest paragraph 27.3 should not be given effect. Because Appellant failed to raise this claim in his pleadings and no reasonable inference supports his claim of right as an intended beneficiary, we need not reach the remainder of Appellant's arguments under the contract about the acceptance doctrine. Points III and VI are denied.

**Conclusion**

We have reviewed the record in the light most favorable to Appellant's case and afforded Appellant all reasonable inferences. The material facts surrounding Appellant's injury are undisputed and the law is clear: Missouri's acceptance doctrine insulates subcontractors from liability for their work after they relinquish control of a workspace to the general contractor and the general contractor approves the work. *Weber*, 182 S.W.3d at 644. On this record, there are no reasonable inferences Respondents were still working where Appellant was injured at the time of

the injury or K&S did not accept their completed work.  Respondents are entitled to judgment as a matter of law and the judgment of the trial court is affirmed.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.

14